# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Dark Green Samsung cellphone<br>Seizure No. 2025250100013401-0005<br>("Target Device 2") | )<br>)<br>)  Case No.  '25 MJ380<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841 | Distribution of controlled substances |
| 21 USC Sec. 846 | Conspiracy to do the same |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Mariana Kelemen, HSI Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: January 24, 2025

*Judge's signature*

City and state: San Diego, California    Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

Dark Green Samsung cell phone
Seizure No. 2025250100013401-0005
("**Target Device 2**")

    **Target Device 2** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

# **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2, and includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 18, 2024, up to and including October 17, 2024:

    a. tending to indicate efforts to distribute controlled substances from within the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of controlled substances within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in distribution of Methamphetamine, or some other federally controlled substance within the United States;

    d. tending to identify travel to or presence at locations involved in the distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 (Distribution of Controlled Substances) and 846 (Conspiracy to Distribute Controlled Substances).

# AFFIDAVIT

I, HSI Task Force Officer Mariana Kelemen, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (Collectively, the "**Target Devices**"):

    A-1:    Grey Motorola cellphone
             Seizure No. 2025250100013401-0004
             ("**Target Device 1**")

    A-2:    Dark Green Samsung cellphone
             Seizure No. 2025250100013401-0005
             ("**Target Device 2**")

as further described in Attachment A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Ricardo Villegas ("**Villegas**") and Aldo Hernandez ("**Hernandez**") (collectively, "**Defendants**"), for distribution of controlled substances and conspiracy to distribute controlled substances within the United States. The **Target Devices** are currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Customs and Border Protection Officer with Department of Homeland Security since November of 2011. I am currently assigned to work as a Task Force Officer for the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. Based on my training and experience, and consultation with law enforcement officers experienced in narcotics investigations, I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. I am also aware that:

    a. Drug distributors will use digital devices like cellular telephones, tablets, and laptop computers because they are mobile and they have instant access to telephone calls, text, web, email and voice messages; tending to indicate efforts to distribute controlled substances within the United States and between the United States;

    b. Drug distributors will use digital devices like cellular telephones tablets, and laptop computers to arrange smuggling activities and to arrange the restocking of their controlled substance supply from wholesalers or cross-border drug traffickers;

    c. Drug distributors and their accomplices will use digital devices like cellular telephones, tablets, and laptop computers because they can

      easily coordinate their sales activity such as arranging meeting locations and controlled substance prices with customers;

    d. Drug distributors will use digital devices like cellular telephones, tablets, and laptop computers to notify or warn their accomplices of suspected law enforcement activity such as the presence of marked police vehicles in their area, suspected physical or electronic surveillance, and concerns of ongoing investigations;

    e. The use of digital devices like cellular telephones, tablets and laptop computers by traffickers tends to generate evidence that is stored on the digital devices, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

    f. Individuals involved in drug distribution often utilize digital devices like cellular telephones, tablets, and laptop computers with photograph and video capabilities to take and send photographs and videos of other members of criminal organizations, firearms, drugs, criminal proceeds, and assets purchased with criminal proceeds.

    g. Individuals involved in drug trafficking may utilize laptop computers and cellular telephones to generate or save documents to track proceeds or inventory related to the distribution of narcotics or drug proceeds and may visit websites to research or support false background stories in an attempt to create a front of a legitimate operation.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs

from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of controlled substances within the United States;

d. tending to identify the presence of locations involved in the distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On October 17, 2024, San Diego Police Department ("SDPD") Officers observed that the license plate light of a blue 2012 Lincoln MKZ, bearing California license plate number 8NLU773 ("Lincoln"), was operating in violation of California Vehicle Code Section 24601. Specifically, the license plate light was not illuminated and officers observed that the bulb was missing. Based on their observations, SDPD

1  Officers initiated a traffic stop. The Lincoln pulled into a parking spot inside of the EZ-
2  8 motel located at 4747 Pacific Highway, San Diego. Inside the Lincoln were two male
3  occupants, later identified as driver, Ricardo Villegas ("Villegas"), and passenger Aldo
4  Hernandez ("Hernandez") (collectively "**Defendants**").

5        8.     Villegas quickly exited the vehicle but was verbally told to reenter the
6  vehicle by SDPD Officers. Following verbal commands, Villegas reentered the Lincoln
7  but left the driver side door open.

8        9.     While they were speaking with the Lincoln's occupants, SDPD officers
9  observed that Hernandez's speech was slurred and that he had slow physical
10 movements. In plain view, SDPD officers observed a glass pipe with circular bulbous
11 burnt end in the driver side door panel. SDPD officers knew, through training and
12 experience, that the glass pipe was drug paraphernalia, specifically a pipe used to ingest
13 controlled dangerous substances, typically methamphetamine.

14       10.    After the drug paraphernalia was discovered, Villegas and Hernandez were
15 handcuffed, removed from the vehicle, and escorted to the front of the patrol vehicle.
16 SDPD Officers conducted a search of Villegas's person and found a clear plastic bag
17 containing a crystalline substance inside Villegas's left shoe. The crystalline substance
18 taken out of Villegas's left shoe field tested positive for the presence of
19 methamphetamine and weighed 2.2 grams.

20       11.    Hernandez was instructed to exit the vehicle. After SDPD officers
21 instructed Hernandez to exit the Lincoln and Hernandez opened the door to exit, officers
22 saw two clear plastic bags containing a crystalline substance wedged between the side
23 of the front passenger seat and the floorboard. The crystalline substance was located
24 directly beside Hernandez and was hidden in a manner that led the SDPD Officer to
25 believed Hernandez was attempting to conceal the plastic bags to avoid detection. The
26 crystalline substance in the plastic bags field tested positive for the presence of
27 methamphetamine.

28       12.    An SDPD officer conducted a search of Hernandez and located several

empty clear plastic bags on his person. SDPD Officers returned to the Lincoln and discovered an additional clear plastic bag containing a crystalline substance, and two scales covered in crystalline residue in the front seat passenger floorboard. Based on my training and experience, the clear plastic bags in conjunction with the two scales covered in crystalline residue is an indication that the crystalline material was being weighed and packaged in the clear plastic bags for distribution. The crystalline substance found in the plastic bags on the floorboard field tested positive for the presence of methamphetamine and weighed 43.8 grams.

13. While searching the center console area of the Lincoln, SDPD officers found $2,403 U.S. Dollars in various denominations in the upper compartment area and a clear plastic bag containing a crystalline substance in the lower compartment area. The crystalline substance in the clear plastic bag field tested positive for the presence of methamphetamine and weighed as 57.4 grams.

14. While searching the back seat area of the vehicle, SDPD Officers found a paper bag and two large Puma-branded duffle bags. The paper bag contained five sealed bags, approximately 10 inches by 5 inches, containing a white crystalline substance. The crystalline substance field tested positive for the presence of methamphetamine and weighed 2.40 kilograms.

15. Inside one of the black Puma branded bags SDPD officers found a black BB gun and two zip-lock bags with a white crystalline substance. The crystalline substance field tested positive for the presence of methamphetamine and weighed 14.7 grams. While SDPD Officers searched the black Puma bag with the BB gun and methamphetamine inside, Hernandez yelled not to parade his bag around.

16. Based on SDPD officers' observation of the controlled substances found in the Lincoln, Villegas and Hernandez were arrested for violation of the California Health and Safety code.

17. The **Target Devices** were found and seized by a SDPD who had reason to believe there were narcotics in the vehicle and performed a vehicle inspection. SDPD

inventoried all the property seized from the Vehicle. Both **Target Devices** were on the front passenger seat of the vehicle. The **Target Devices** were then turned over and seized by an HSI Task Force Officer who was tasked to perform an inventory all the property seized from the Defendants.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that Defendants were using the **Target Devices** to communicate with others to further the distribution of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug distribution events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on August 18, 2024, up to and including October 17, 2024.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

# CONCLUSION

23. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

24. I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Task Force Officer Mariana Kelemen,
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this ~~24th day of December 2024.~~
**Jan 24, 2025**

_____
Honorable Barbara L. Major
United States Magistrate Judge

# **ATTACHMENT A-2**

PROPERTY TO BE SEARCHED

The following property is to be searched:

Dark Green Samsung cell phone
Seizure No. 2025250100013401-0005
("**Target Device 2**")

**Target Device 2** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

# ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2, and includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 18, 2024, up to and including October 17, 2024:

a. tending to indicate efforts to distribute controlled substances from within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in distribution of Methamphetamine, or some other federally controlled substance within the United States;

d. tending to identify travel to or presence at locations involved in the distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 (Distribution of Controlled Substances) and 846 (Conspiracy to Distribute Controlled Substances).